Dennis **MEDINA–MORALES,**
Petitioner,

v.

John **ASHCROFT, Attorney**
**General, Respondent.**

No. 02–73924.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2004.

Filed April 7, 2004.

Amended June 7, 2004.

---

522

---

Stephen W. Manning, Immigrant Law Group LLP, Portland, OR, for the petitioner.

Aviva L. Poczter, United States Department of Justice Office of Immigration Litigation, Washington, DC, for the respondent.

Before D.W. NELSON, FISHER and GOULD, Circuit Judges.

## ORDER AND AMENDED OPINION

### ORDER

The opinion filed on April 7, 2004, slip op. at 4463, and published at 362 F.3d 1263 (9th Cir.2004), is amended by the opinion filed concurrently with this order.

### OPINION

FISHER, Circuit Judge.

Dennis Medina–Morales, a native and citizen of Honduras, petitions for review of the decision of the Board of Immigration Appeals ("BIA"), dismissing his appeal from the Immigration Judge's ("IJ's") denial of his motion to reopen removal proceedings. In his motion to reopen, Medina–Morales sought to resurrect his application for adjustment of status based upon his relationship with his stepfather, who is an American citizen. *See* 8 U.S.C. § 1255. Medina–Morales previously abandoned this application in a hearing before the IJ and instead accepted voluntary departure under 8 U.S.C. § 1229c.

Medina–Morales' removal proceedings began after April 1, 1997, so this case falls within the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 ("IIRIRA"). Medina–Morales argues that the BIA erred in basing its decision on (1) his previous agreement to depart voluntarily and (2) his ostensibly weak relationship with his stepfather. The government argues that these aspects of the BIA's decision are discretionary and that IIRIRA, and in particular § 242(a)(2)(B) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1252(a)(2)(B)) [hereinafter § 1252(a)(2)(B)], deprives us of jurisdiction to review them. We hold that § 1252(a)(2)(B) does not deprive us of jurisdiction, but conclude that the BIA did not abuse its discretion in finding that Medina–Morales' voluntary departure agreement weighed against granting his motion to reopen. We also hold that § 1252(a)(2)(B) does not affect our jurisdiction to review BIA decisions that are contrary to law. The BIA violated its own precedent by looking to the strength of Medina–Morales' relationship to his stepfather in denying his motion to reopen. We therefore grant Medina–Morales' petition and remand.

## I. Background

Medina–Morales entered the United States in 1986 without being admitted or paroled. In August 1992, his natural mother married Ernesto Chavaria, a native and citizen of the United States. In 1996, they began living apart but have no plans to divorce.

Medina–Morales traveled to Honduras in 1993, seeking an immigrant visa to the United States. When his visa was refused, he returned to the United States anyway. The Immigration and Naturalization Service ("INS") issued Medina–Morales a notice to appear on August 13, 1998, alleging that he was a removable alien.[1] At a hearing on November 5, 1998, Medina–Morales indicated that he intended to apply for adjustment of status based upon his stepfather's U.S. citizenship. At subsequent hearings in October and November 1999, Chavaria failed to appear and testify regarding the petition for adjustment of status that he had filed on Medina–Morales' behalf. At the conclusion of the November hearing, Medina–Morales agreed to withdraw his adjustment of status application and waive his right to appeal in exchange for voluntary departure. The IJ granted Medina–Morales voluntary departure until February 29, 2000.

On January 14, 2000, Medina–Morales filed a motion to reopen the proceedings, citing an affidavit from Chavaria as new facts justifying the reopening. In the affidavit, Chavaria explained that he did not attend the November 1999 hearing because his brother had suffered a serious heart attack the day before.

The IJ held a hearing on the motion to reopen on February 22, 2000. Chavaria did not appear at this hearing. The IJ held another hearing on March 23, 2000, at which Chavaria did appear and testify. Chavaria said that his brother's heart attack caused him to miss one hearing but did not say why he missed the February 2000 hearing. · At the conclusion of the hearing, the IJ denied Medina–Morales' motion to reopen, citing Chavaria's absences and the ostensibly weak relationship between Medina–Morales and his stepfather.

The BIA affirmed the IJ's denial, citing Medina–Morales' agreement to depart voluntarily and the IJ's assessment of the stepparent-stepchild relationship. In particular, the BIA stated:

> Rather[ ] than follow through with the bargain he made at his removal hearing, the respondent's motion to reopen seeks to resurrect his previously abandoned application for adjustment of status.

> The respondent has failed to establish that allowing the respondent to seek previously abandoned relief on the basis of his relationship to his step-father is deserving of greater discretionary consideration than holding him to the bargain he entered into with the United States when he asked for and accepted voluntary departure under section 240B(a) of the Act. In this regard, the Immigration Judge's finding that the respondent failed to establish a particularly strong relationship between the adult respondent and his United States citizen step-father is also relevant to the exercise of discretion as the quality of the relationship impacts upon the equities the respondent has established in support of reopening.

---

1. As of March 1, 2003, the INS ceased to exist, and most of its functions were transferred to the Bureau of Border Security and the Bureau of Citizenship and Immigration Services. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135. For convenience, we will refer to the relevant government agency as the INS.

## II. Discretionary Denials of Motions to Reopen

 Although eligibility determinations are matters of law, the Attorney General has broad discretion to grant or deny motions to reopen. *See INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); 8 C.F.R. § 1003.23(b)(3).[2] Likewise, "[t]he first step in adjudicating a petition for adjustment of status[under 8 U.S.C. § 1255] is the nondiscretionary determination of statutory eligibility, followed by a discretionary determination regarding whether an eligible applicant is actually permitted to adjust status." *Hernandez v. Ashcroft,* 345 F.3d 824, 845 (9th Cir.2003).[3] Relying on these propositions, the government argues that the BIA's denial of Medina–Morales' motion to reopen his removal proceedings in order to pursue adjustment of status was cloaked in discretion. The government contends that § 1252(a)(2)(B) thus forecloses our jurisdiction over Medina–Morales' petition. Section 1252(a)(2)(B) provides:

(B) Denials of discretionary relief

Notwithstanding any other provision of law, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney

General, other than the granting of relief under section 1158(a) of this title.

### A.

 The BIA exercised its discretion in weighing Medina–Morales' agreement to a voluntary departure against reopening his proceedings. Because Medina–Morales argues that the BIA abused its discretion in doing so, we must consider whether this discretionary aspect of the BIA's denial is among the "[d]enials of discretionary relief" that § 1252(a)(2)(B) withdraws our jurisdiction to review. To that end, we consider separately whether § 1252(a)(2)(B)(i) or § 1252(a)(2)(B)(ii) affects our jurisdiction in this case. Throughout our analysis, we are guided by the "strong presumption in favor of judicial review of administrative action," *INS v. St. Cyr,* 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), and the longstanding principle of construing ambiguous deportation and removal provisions in favor of the alien. *Id.* at 320, 121 S.Ct. 2271; *see, e.g., Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (holding the scope of the jurisdictional bar in 8 U.S.C. § 1252(g) to be "much narrower" than the parties assumed, and to be limited to review of the "three discrete actions" listed in that statute); *Montero–Martinez v. Ashcroft,* 277 F.3d 1137, 1141–44 (9th Cir.2002) (relying on the two principles enunciated in *St. Cyr* in concluding that § 1252(a)(2)(B)(i) does not negate our

2. The BIA may deny a motion to reopen for any one of at least three reasons: "failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Doherty,* 502 U.S. at 323, 112 S.Ct. 719.

3. "[A]n adjustment of status is merely a procedural mechanism by which an alien [already within the United States] is assimilated to the position of one seeking to enter the United States." *Matter of Rainford,* 20 I. & N. Dec. 598, 601 (BIA 1992); 8 U.S.C. § 1255(a).

jurisdiction to review purely legal questions).

### 1.

■ Under § 1252(a)(2)(B)(i), we do not have jurisdiction to review "any judgment regarding the granting of relief under [8 U.S.C.] section 1182(h), 1182(i), 1229b, 1229c, or 1255." Discretionary determinations are "judgments" for the purposes of § 1252(a)(2)(B)(i). *Montero-Martinez,* 277 F.3d at 1144. Because discretionary denials of motions to reopen are thus judgments subject to § 1252(a)(2)(B)(i), the question is whether they are judgments "regarding the granting of relief under" 8 U.S.C. §§ 1182(h), 1182(i), 1229b, 1229c or 1255.

The only statutory reference to motions to reopen appears in 8 U.S.C. § 1229a(c)(6), which is not among the sections enumerated in § 1252(a)(2)(B)(i). The proceedings below have also involved several other INA provisions, however. Medina–Morales was initially charged under 8 U.S.C. § 1182(a)(6)(A)(i), as a removable alien present in the United States without admission or parole. He then sought adjustment of status under 8 U.S.C. § 1255, through a petition filed by his stepfather on his behalf. Finally, Medina–Morales abandoned his adjustment of status application and accepted voluntary departure under 8 U.S.C. § 1229c. Thus, sections 1229a, 1182(a), 1255 and 1229c are the eligible sections to which the denial of Medina–Morales' motion to reopen might be linked for the purposes of § 1252(a)(2)(B)(i). Of these sections, only two— § 1255, involving applications for adjustment of status, and § 1229c, involving requests for voluntary departure—are listed in § 1252(a)(2)(B)(i). If the denial of Medina–Morales' motion to reopen was a judgment regarding the granting of relief under either § 1255 or § 1229c, then we

are without jurisdiction to review the discretionary aspects of the BIA's decision.

We are guided by *Rodriguez–Lariz v. INS,* 282 F.3d 1218 (9th Cir.2002), in which we examined a nearly identical statutory provision under nearly identical circumstances. *Rodriguez–Lariz* addressed our jurisdiction under IIRIRA's transitional rules to review the BIA's denial of a motion to reopen where the alien had agreed to a voluntary departure instead of deportation. IIRIRA § 309(c)(4)(E) foreclosed review in transitional rules cases of "any discretionary decision under" certain enumerated provisions, *see Rodriguez–Lariz,* 282 F.3d at 1223, much as § 1252(a)(2)(B)(i) forecloses review in permanent rules cases of discretionary decisions "regarding the granting of relief under" enumerated provisions.

Although the petitioners in *Rodriguez–Lariz* had agreed to a voluntary departure, and the voluntary departure provision was among those enumerated in IIRIRA § 309(c)(4)(E), we held that we had jurisdiction to review the denial of petitioners' motions to reopen "because the grounds for deportability—which form the underlying basis for the grant of voluntary departure—arose under" a provision not enumerated in § 309(c)(4)(E). *Rodriguez–Lariz,* 282 F.3d at 1223. In so holding, we relied on *Arrozal v. INS,* 159 F.3d 429(9th Cir.1998), which held that we had jurisdiction under IIRIRA's transitional rules to review the BIA's denial of a motion to reopen. 159 F.3d at 432. In *Arrozal,* as in *Rodriguez–Lariz,* the provision under which the alien's deportation order was issued was not listed in § 309(c)(4)(E). *Arrozal,* 159 F.3d at 432; *Rodriguez–Lariz,* 282 F.3d at 1223. Together, *Rodriguez–Lariz* and *Arrozal* hold that, in determining whether § 309(c)(4)(E) removes jurisdiction to review the denial of a motion to reopen in a transitional rules case,

we look to whether the provision setting forth the grounds for deportation was itself set forth in § 309(c)(4)(E).

Section 1252(a)(2)(B)(i) is analogous to IIRIRA § 309(c)(4)(E) insofar as each jurisdiction-limiting provision precludes appeals of an effectively identical set of discretionary determinations. Section 309(c)(4)(E) precludes jurisdiction in transitional rules cases over "any discretionary decision under" then-existing 8 U.S.C. §§ 1182(c), 1182(h), 1182(i), 1254 and 1255. Although relief under one of these provisions, 8 U.S.C. § 1182(c), is no longer available subsequent to IIRIRA's enactment, the discretionary determinations covered by the remaining four provisions correspond exactly to the discretionary determinations covered by the five provisions listed in § 1252(a)(2)(B)(i).[4] The kinds of discretionary determinations covered by § 309(c)(4)(E) are thus the same as those covered by § 1252(a)(2)(B)(i), so we shall follow *Rodriguez–Lariz* and *Arrozal* in applying § 1252(a)(2)(B)(i) in this case.[5]

Doing so, we conclude that § 1252(a)(2)(B)(i) does not withdraw our jurisdiction to review the BIA's denial of Medina–Morales' motion to reopen. Because Medina–Morales abandoned his petition for adjustment of status and instead accepted voluntary departure, the IJ *never ruled* on Medina–Morales' adjustment of status petition but instead *granted* his request for voluntary departure. Medina–Morales does not, therefore, appeal the denial of an adjustment of status application under § 1255 or a denial of voluntary departure under § 1229c. *See Zazueta–Carrillo v. Ashcroft*, 322 F.3d 1166, 1169 (9th Cir.2003) (rejecting the government's argument that the denial of an alien's motion to reopen "involve[d] a 'judgment regarding the granting' of voluntary departure" within the meaning of § 1252(a)(2)(B)(i), where the alien had been granted voluntary departure). Rather, Medina–Morales' appeal "involves a decision regarding the denial of a motion to reopen," *Zazueta–Carrillo*, 322 F.3d at 1169–70.

The denial of Medina–Morales' motion to reopen is a decision under 8 U.S.C. § 1182(a)(6)(A)(i), the provision relied upon by the INS as the basis for his removability. *See Rodriguez–Lariz*, 282 F.3d at 1223. The BIA's decision is not, therefore, a judgment "regarding the granting of relief under" 8 U.S.C. §§ 1182(h), 1182(i), 1229b, 1229c or 1255, the provisions listed in § 1252(a)(2)(B)(i). We hold, accordingly, that § 1252(a)(2)(B)(i) does not preclude our review of the discretionary aspects of the BIA's denial of Medina–Morales' motion to reopen.[6]

---

**4.** Three provisions—8 U.S.C. §§ 1182(h), 1182(i) and 1255—appear in both IIRIRA § 309(c)(4)(E) and 8 U.S.C. § 1252(a)(2)(B)(i). A fourth provision in IIRIRA § 309(c)(4)(E), namely 8 U.S.C. § 1254, has been repealed. However, the types of discretionary relief previously addressed by that provision, specifically suspension of deportation and voluntary departure, are now addressed by the remaining two provisions listed in 8 U.S.C. § 1252(a)(2)(B)(i), namely 8 U.S.C. §§ 1229b, 1229c.

**5.** That § 309(c)(4)(E) is worded slightly differently from § 1252(a)(2)(B)(i)—the former refers to "discretionary decision[s] under" its

enumerated provisions, while the latter refers to "any judgment regarding the granting of relief under" its enumerated provisions—does not undercut our application of *Rodriguez–Lariz's* and *Arrozal's* logic to this case. The key word in both provisions is "under"—here, whether the BIA's denial of Medina–Morales' motion to reopen was *under* any of the provisions listed in § 1252(a)(2)(B)(i).

**6.** In a letter filed pursuant to Federal Rule of Appellate Procedure 28(j) on the day of oral argument, the government argues for the first time that relief for Medina–Morales is foreclosed by 8 U.S.C. § 1229c(d), which subjects

**2.**

█ Under § 1252(a)(2)(B)(ii), we do not have jurisdiction to review "any other decision or action of the Attorney General the authority for which is specified under [the INA] to be in the discretion of the Attorney General." [7] Interpreting this provision, we have emphasized that it "refers not to 'discretionary decisions,' as did the transitional rules, but to acts the *authority* for which is *specified* under the INA to be discretionary." *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir.2003). Thus, the jurisdictional bar in § 1252(a)(2)(B)(ii) applies only to acts over which a statute gives the Attorney General pure discretion unguided by legal standards or statutory guidelines. *Spencer Enters.*, 345 F.3d at 689–90.

█ Denials of motions to reopen are not acts over which *a statute* gives the Attorney General such pure discretion. Until IIRIRA's enactment in 1996, "[t]here [was] no statutory provision for reopening of a deportation proceeding, and the authority for such motions derive[d] solely from regulations promulgated by the Attorney General." *INS v. Doherty*, 502 U.S. 314, 322, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). IIRIRA added 8 U.S.C. § 1229a(c)(6), which, far from authorizing pure, unguided discretion on the part of the Attorney General, specifies guidelines for aliens and makes no mention of discretion. It provides only that "[a]n alien may file one motion to reopen," § 1229a(c)(6)(A); specifies that the motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material," § 1229a(c)(6)(B); and provides deadlines for the filing of such motions, § 1229a(c)(6)(C). Thus Congress, in enacting § 1229a(c)(6)(C), did not specify that the Attorney General has discretionary authority over motions to reopen.

Immigration judges do have broad discretion to deny motions to reopen. *See* 8 C.F.R. § 1003.23(b)(3). [8] Just as before IIRIRA's enactment, however, this discretion still "derives solely from *regulations* promulgated by the Attorney General," rather than from a statute. *See Doherty*, 502 U.S. at 322, 112 S.Ct. 719 (emphasis added). Because 8 U.S.C. § 1229a(c) neither grants nor limits the Attorney General's discretion to deny motions to reopen, IIRIRA can perhaps be said to have left such authority to the Attorney General by default. But default authority does not constitute the *specification* required by § 1252(a)(2)(B)(ii). We cannot ignore that Congress, in enacting IIRIRA, expressly referred to "authority . . . specified under this subchapter to be in the discretion of the Attorney General" at the same time it enacted a first-time provision addressing motions to reopen (§ 1229a(c)), but said

---

aliens to civil liability for failing timely to depart pursuant to a voluntary departure arrangement. We conclude that the government has waived this argument, *see Confederated Tribes of Umatilla Indian Reservation v. Bonneville Power Admin.*, 342 F.3d 924, 933 (9th Cir.2003) (holding that "we do not consider Sierra Club's argument made for the first time in a Fed. R.App. P. 28(j) letter"), and also deny as moot Medina–Morales' motion for supplemental briefing filed in response.

7. This jurisdictional bar does not apply to relief granted under 8 U.S.C. § 1158(a), a provision not relevant here. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

8. The regulation elaborates the requirements mentioned in 8 U.S.C. § 1229a(c) and also provides that "[t]he Immigration Judge has discretion to deny a motion to reopen even if the moving party has established a prima facie case for relief." 8 C.F.R. § 1003.23(b)(3).

nothing about the Attorney General's discretionary authority over such motions.

Given the statutory language requiring specification, the interpretation of that language in *Spencer Enterprises* and the " 'longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien,' " we decline to interpret § 1252(a)(2)(B)(ii) as a jurisdictional bar to our review of Medina–Morales' motion to reopen. *St. Cyr,* 533 U.S. at 320, 121 S.Ct. 2271 (quoting *INS v. Cardoza–Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

**B.**

██ Turning to the merits of Medina–Morales' challenge, we consider his argument that the BIA created a new evidentiary standard, thus denying him due process, or else abused its discretion in concluding that Medina–Morales

> has failed to establish that allowing [him] to seek previously abandoned relief on the basis of his relationship to his step-father is deserving of greater discretionary consideration than holding him to the bargain he entered into with the United States when he asked for and accepted voluntary departure under [8 U.S.C. § 1229c(a)].

In particular, Medina–Morales argues that the BIA impermissibly used contract law principles to deny his motion to reopen, by relying on his "bargain" with the IJ.

We do not think that the BIA's decision created a new evidentiary standard. We have previously held that the BIA announced a new evidentiary standard and thus denied an alien due process when, without notice, it relied exclusively on the alien's failure to provide " 'medical evidence' or additional declarations" in concluding that his alleged foot injury did not constitute an exceptional circumstance warranting rescission of deportation. *Singh v. INS,* 213 F.3d 1050, 1053 (9th

Cir.2000); *see also Arrieta v. INS,* 117 F.3d 429, 432 (9th Cir.1997) (holding that the BIA had imposed a new standard of proof by requiring the alien to provide substantial evidence to overcome a presumption of effective mail delivery).

Unlike in *Singh* and *Arrieta,* however, the BIA's decision here did not turn on the presence or absence of a particular type or quantum of evidence. Moreover, the BIA never stated that it was applying contract law principles; nor did it suggest that Medina–Morales could prevail only under a contract law analysis. *Cf. Celis–Castellano v. Ashcroft,* 298 F.3d 888, 891 (9th Cir.2002) ("While the statement [that'[t]he lack of evidence regarding the severity of his asthma attack restricts our ability to determine if [Celis–Castellano's] illness was, in fact, exceptional,'] could be clearer, we conclude it did not establish a new evidentiary requirement of an 'exceptional' versus a 'serious' illness."). In short, the BIA's analysis did not turn on an *evidentiary* standard. Rather, as the BIA itself stated, it regarded Medina–Morales' bargain as deserving of "discretionary consideration." We therefore conclude that in relying on Medina–Morales's bargain, the BIA did not announce a new evidentiary standard but rather chose a factor to include in its discretionary calculus. We review the BIA's weighing of Medina–Morales' bargain for abuse of discretion, *see Cano–Merida v. INS,* 311 F.3d 960, 964 (9th Cir.2002), that is, whether the BIA acted arbitrarily, irrationally or contrary to law. *Singh,* 213 F.3d at 1052.

The BIA appropriately concluded that Medina–Morales' voluntary departure bargain weighed against him. In pointing to Medina–Morales' acceptance of voluntary departure, the BIA merely emphasized that it needed a good reason to disrupt the status quo by reopening Medina–Morales'

case. *See Doherty*, 502 U.S. at 323, 112 S.Ct. 719 (observing that motions to reopen are "disfavored"). Our case law, moreover, has actually portrayed voluntary departure arrangements as bargains, just as the BIA did here. Under both the pre-IIRIRA and IIRIRA provisions, voluntary departures are available, at the Attorney General's discretion, "in lieu of" deportation or removal proceedings. *See* 8 U.S.C. § 1229c(a)(1) (providing for permission "voluntarily to depart ... in lieu of being subject to [removal] proceedings ... or prior to the completion of such proceedings"); 8 U.S.C. § 1254(e)(1) (repealed 1996). Interpreting this language in the days before IIRIRA, we held that because voluntary departures were "in lieu of deportation," they were "accepted [by the alien as] the lesser of two evils." *Barragan–Sanchez v. Rosenberg*, 471 F.2d 758, 760 (9th Cir.1972); *see also Vasquez–Lopez v. Ashcroft*, 343 F.3d 961, 970–71 (9th Cir.2003) (per curiam) (using *Barragan–Sanchez's* observation that voluntary departures result from implied agreements to inform the court's consideration of IIRIRA's continuous physical presence requirement). As such, "the alleged *voluntary* departures were the result of an *implied agreement* that [the alien] would not return. Otherwise, there would be no reason behind the procedure of voluntary departures in lieu of deportation proceedings." *Barragan–Sanchez*, 471 F.2d at 760 (second emphasis added).

The implied agreement underlying a voluntary departure order serves both parties. The government affords the alien a more convenient means of leaving the country, and, in exchange, the alien assures the government that he will not further press his right to remain in the country. As we have observed, "[t]he purpose of voluntary departure is, after all, to encourage the alien to depart without further ado." *Zazueta–Carrillo*, 322 F.3d at 1173. A motion to reopen is, of course, further ado.[9]

In *Zazueta–Carrillo, Vasquez–Lopez* and *Barragan–Sanchez*, we relied on the aliens' previous voluntary departure agreements in rejecting their arguments for relief. *Zazueta–Carrillo*, 322 F.3d at 1173–74 (rejecting alien's argument that the voluntary departure period did not begin until after our review, in light of the "specific policy" of voluntary departure to encourage prompt departure); *Vasquez–Lopez*, 343 F.3d at 974 ("While the statute provides some incentives to an alien to apply for voluntary departure and thus avoid removal proceedings and removal, nothing there suggests that an alien who commits to departure in order to avoid such proceedings is nevertheless entitled to continue accruing 'presence' so as to become eligible for other discretionary relief."); *Barragan–Sanchez*, 471 F.2d at 760–61 (holding that because alien's two

---

9. *Zazueta–Carrillo* concerned a voluntary departure granted at the conclusion of removal proceedings pursuant to 8 U.S.C. § 1229c(b). Medina–Morales received voluntary departure pursuant to 8 U.S.C. § 1229c(a), which concerns grants of voluntary departure in lieu of or prior to the conclusion of removal proceedings. *Zazueta–Carrillo* considered the purpose of voluntary departure in concluding that the voluntary departure period begins to run "when an Immigration Judge or the BIA enters an order granting voluntary departure," not when our court completes its review. 322 F.3d at 1174. It did not decide whether the BIA may weigh a § 1229c(b) voluntary departure against granting an alien's bona fide motion to reopen made after a full adjudication of removal proceedings. We do not decide that precise issue here. Instead, we hold that the BIA may weigh a § 1229c(a) voluntary departure against granting an alien's motion to reopen made before a full adjudication of removal proceedings where, as here, the alien bargained for voluntary departure in lieu of full adjudication.

previous voluntary departures were the result of implied agreements and were not, therefore, strictly voluntary, they constituted significant departures that precluded a finding of seven years' continuous presence in the United States under a rule that excused absences that were brief, casual and innocent); *cf. Doherty,* 502 U.S. at 324, 112 S.Ct. 719 (holding that "the Attorney General did not abuse his discretion in denying reopening ... on the basis that respondent failed to satisfactorily explain his previous withdrawal of these claims"). Having recognized in our own jurisprudence that voluntary departures are implied agreements that in appropriate circumstances may weigh against granting further relief to aliens, we cannot fault the BIA for doing likewise here, where Medina–Morales bargained for voluntary departure in lieu of full adjudication.[10]

### III. The Stepparent–Stepchild Relationship

■■■■ This conclusion does not end our analysis, however. Section 1252(a)(2)(B) does not purport to withdraw our jurisdiction to review nondiscretionary aspects of the BIA's denial of a motion to reopen. For example, we have jurisdiction to review de novo a BIA decision that is contrary to law and will grant an alien's petition in such a case. *See Hernandez v. Ashcroft,* 345 F.3d 824, 832, 845–48 (9th Cir.2003) (holding that we had jurisdiction and granting alien's petition, where the BIA unlawfully relied on the non-viability of the alien's marriage in denying her application for adjustment of status). We conclude that the BIA's reliance on the strength of the stepparent-stepchild relationship here was indeed contrary to law.

Adjustment of status is governed by 8 U.S.C. § 1255, under which an alien may become a permanent resident, at the Attorney General's discretion, if he is the beneficiary of a petition for adjustment of status and if he meets certain other conditions. *See* 8 U.S.C. §§ 1154, 1255(a), (i). Significantly for this case, the INA does not distinguish among stepchildren and natural children. *See* 8 U.S.C. § 1101(b)(1)(B)(defining "child" to include "a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred"). Thus, in *Palmer v. Reddy,* 622 F.2d 463 (9th Cir.1980), we struck down an INS requirement that applicants prove that stepchildren be part of a "close family unit" to be eligible for visa preference, in light of our conclusion that the statute made the preference "available to stepchildren as a class *without further qualification.*" *Id.* at 464 (emphasis added).

Following *Palmer,* the BIA has said that "no qualifications beyond a valid marriage creating the step-relationship should be imposed." *Matter of Vizcaino,* 19 I. & N. Dec. 644, 648 (BIA 1988). Accordingly, the BIA has refused to look beyond the fact of a stepparent-stepchild relationship to the strength of that relationship. *See Matter of Mowrer,* 17 I. & N. Dec. 613, 615 (BIA 1981) (holding that the "requisite relationship between" stepparent and stepchildren existed because there had been no legal divorce or separation and that "the appropriate inquiry in cases where there has been a legal separation or where the marriage has been terminated by divorce or death is whether a family relationship

---

**10.** The BIA cannot deny a motion to reopen merely because an alien appeals a deportation order, however. *See Watkins v. INS,* 63 F.3d 844, 851 (9th Cir.1995) ("The BIA's denial of the motion to reopen in this case for the sole reason that petitioner appealed her deportation order was an abuse of discretion.").

has continued to exist as a matter of fact between the stepparent and stepchild"); *Matter of McMillan,* 17 I. & N. Dec. 605, 606–07 (BIA 1981) (abandoning previous view that "the mere fact of a marriage which technically creates a step-relationship does not in itself establish a stepparent stepchild relationship for purposes of the immigration laws"); *see also Matter of Bonnette,* 17 I. & N. Dec. 587, 588 (BIA 1980) (overruling case decided before *Palmer* to the extent that it looked to the substance of the stepparent-stepchild relationship). Further inquiry is appropriate only where the marriage was a sham from the beginning, where the parties to the marriage creating the step-relationship have legally separated or where the marriage has been terminated by divorce or death. *See Matter of Awwal,* 19 I. & N. Dec. 617, 620–22 (BIA 1988); *Matter of Mourillon,* 18 I. & N. Dec. 122, 125–26 (BIA 1981). Medina–Morales' natural mother and stepfather have not legally separated or divorced, nor is there any record evidence that their marriage was a sham, so the BIA's decision in this case directly contradicted BIA precedent.

"Because the decision made by the BIA was contrary to law, it was not discretionary and jurisdiction exists to review the determination." *Hernandez,* 345 F.3d at 847.[11] Moreover, "[b]ecause the basis of our jurisdiction is the fact that the BIA acted beyond the bounds of its discretion by relying" on the strength of the stepparent-stepchild relationship "in contradiction to its own case law, the merits of the question require little additional scrutiny." *Id.* The BIA erred as a matter of law in relying on the strength of Medina–Mor-

ales' relationship to his stepfather as a basis for its decision.

## IV.

We hold that the jurisdictional bars of 8 U.S.C. §§ 1252(a) (2)(B)(i) and (ii) do not preclude our jurisdiction to review the BIA's discretionary denial of Medina–Morales' motion to reopen. We further hold that although the discretionary aspects of the BIA's decision were not an abuse of its discretion, the BIA acted contrary to law in denying Medina–Morales' motion to reopen. Because its reliance on the strength of Medina–Morales' relationship with his stepfather violated BIA precedent, we have jurisdiction to review that aspect of the BIA's decision and conclude that the BIA erred.

Petition **GRANTED** and **REMANDED** for further proceedings.

---

11. The BIA has not argued that, in denying Medina–Morales' motion to reopen, it was overruling cases like *Vizcaino* and *Mowrer.*