# United States Court of Appeals
## For the First Circuit

---

No. 05-1412

AGRON MEHILLI; SONILA MEHILLI; XHESIKA MEHILLI; XHONATHAN
MEHILLI; SERXHI MEHILLI;

Petitioners,

v.

ALBERTO GONZALES, Attorney General of the United States,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Walter J. Gleason on brief for petitioners.
John M. Lynch, Attorney, Office of Immigration Litigation,
Civil Division, United States Department of Justice, Peter D.
Keisler, Assistant Attorney General, and Terri J. Scadron,
Assistant Director, Office of Immigration Litigation, on brief for
respondent.

---

December 22, 2005

---

**LYNCH**, **Circuit Judge**.  Petitioners in this immigration case sought asylum relief, withholding of removal, and protection under the Convention Against Torture (CAT).  The Immigration Judge and Board of Immigration Appeals denied relief, finding the asylum application time-barred and the other claims meritless.  Petitioners did not timely seek judicial review of that decision; instead, they moved for reconsideration before the BIA, were denied, and then sought judicial review of that latter denial.

Their petition presents a question of first impression in this circuit as to limits on jurisdiction: whether 8 U.S.C. § 1158(a), which forbids direct review of the decision that an asylum application is time-barred, applies equally to review of the BIA's denial of reconsideration on the same issue.  We hold that it does, and therefore that we have no jurisdiction as to denial of asylum to the petitioners.

We do have jurisdiction over the denial of reconsideration as to withholding of removal and CAT protection.  Since we find that the BIA did not abuse its discretion in denying reconsideration of these claims, we deny the petition for review.

**I.**

Petitioners are a married couple, Agron and Sonila Mehilli, and their three children, Xhesika, Xhonathan, and Serxhi Mehilli.  All rely on the application for relief of the father, Agron Mehilli ("Mehilli").

## A. Mehilli's Application and Testimony

Mehilli, a native of Albania, arrived in the United States on a date which is the subject of some dispute. Mehilli applied for asylum, withholding of removal, and CAT relief on June 23, 2001; in that application, he stated that he entered the United States on December 5, 2000. He later changed that date of entry, as we explain below. On January 14, 2002, the former Immigration and Naturalization Service (INS)[1] instituted removal proceedings against him.

On May 9, 2003, Mehilli appeared before an initial Immigration Judge. He testified that he left Albania in late November of 2000 and traveled to Athens, then Milan, and finally Los Angeles, arriving on December 5, 2000. Mehilli told the initial IJ that he entered the United States using a false passport bearing the name Fatmir Gjata. The initial IJ immediately asked the government to check whether a Fatmir Gjata entered the country on that date; the government ran a computer check and found no matches. When this was relayed to Mehilli, he said, "I don't believe it, because I came, that's the way I came from Albania . . . that's the name." He added: "I cannot lie."

---

[1] On March 1, 2003, the relevant functions of the INS were transferred to the Department of Homeland Security, and the INS subsequently ceased to exist. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)).

Mehilli later appeared before a second IJ on three different dates in 2003 to offer further testimony. At the first of these hearings, the IJ said he would "start the case de novo" and would take testimony even on issues covered by the initial IJ, because he needed to make credibility determinations himself.

Mehilli then testified to a version of events that differed substantially from both his earlier testimony and his asylum application: he stated that he had traveled from Athens to Milan using the name Fatmir Gjata, but that he had then traveled from Milan to Los Angeles with a Slovenian passport bearing the name Marko Brezar. He also stated that he arrived on May 4, 2001, not December 5, 2000. Mehilli submitted as evidence a passport bearing the name Marko Brezar; he also submitted a plane ticket bearing the same name, which he said he had used to fly to Los Angeles. Asked why he was changing his testimony, he testified that "the person that gave me these passports and tickets" told him "not to show the name and date that I arrived here."

During the same hearing, the second IJ addressed Mehilli's motion for a new trial, in which he argued that the initial IJ had behaved improperly by discounting Mehilli's credibility and trying to impeach his testimony on peripheral issues. The second IJ denied this motion, stating:

> Your client has admitted to us that he was
> lying to the Immigration Judge at the last
> hearing. So I'm finding your motion here less
> than convincing where . . . you seem to be

-4-

> complaining that the Judge was impugning your client's credibility at the last hearing unfairly, when, in fact, it turns out that your client was lying to the Judge.

The IJ went on to find that, since Mehilli offered little proof other than his own testimony as to his arrival date, and since he was not credible given his false testimony under oath, he had not proved that he arrived in the United States within a year before filing his asylum application; this failure rendered him ineligible for asylum.

The IJ stated that despite this ruling, he would hear Mehilli's testimony as to the merits of all three claims for relief.[2] Mehilli testified as follows: He became a member of Albania's Democratic Party in 1992 and played an active role in the party. Beginning in 1993, he owned a bakery in Tirana, the Albanian capital. In 1997, the rival Socialist Party came to power, and Mehilli began to feel pressure from government officials. In February 1997, members of the Socialist Party came to Mehilli's bakery and told him to close it down; they told him they were closing bakeries like his because they wanted to "take the Democratic Party off the power." Mehilli refused. When Socialist officials started paying return visits to bakeries, asking them why they had not closed as ordered, Mehilli moved to a

---

[2] The IJ noted that this would permit him to make an alternative finding as to asylum, which would be necessary should the determination of ineligibility be reversed on appeal.

new space elsewhere in Tirana; the bakery occupied the first floor, while Mehilli and his family lived upstairs. The bakery kept running even after Mehilli left Albania, and Mehilli was still receiving money from its operation, even up to the time of the hearing.

In the summer of 2000, Mehilli testified, he received a letter purporting to levy a $20,000 fine against his bakery; the letter stated that if Mehilli did not pay, he would be killed. He offered no evidence as to who might have sent the letter. However, he testified that several days later, he went to pick up his voting card and discovered that his and his wife's names were misspelled on their cards; at this point, he testified, he realized the incidents were connected -- Socialists had altered his card so he could not vote, and the fine was being levied for political reasons. He admitted on cross-examination, however, that many voters experienced problems with the voter registration lists.

Several days after the voting card incident, Mehilli testified, police officers came to his home at 5 a.m. and searched it. He testified that the officers pushed him against a wall and said, "we came to pick up the guns that you have illegally, because you're a member of the Democratic Party, you have guns." Finally, Mehilli testified that in November 2000, unknown assailants tried to kidnap his younger son. He stated that one day, as his wife, her brother, and his son were leaving the brother's home, three

people "tried to grab" his wife and take her son from her arms. He could not identify the assailants; he said they must have been Socialists because the kidnapping attempt "was a continuance . . . of their actions" against him.

Mehilli's wife, Sonila, also testified. As to the attempted kidnapping, she testified that an armed man tried to grab her son and she pushed him away; as she did so, her brother opened fire, frightening the man off. She stated that she did not fall to the ground at any time during the incident. As to the search, Sonila Mehilli said she saw an officer push her husband, and that no one else was pushed.

## B. The IJ's Decision and Subsequent Appeals

The second IJ's oral decision of September 5, 2003 rejected Mehilli's application on numerous grounds. The IJ reaffirmed his finding that Mehilli was time-barred from seeking asylum. He noted that Mehilli's application was dated June 23, 2001, and that on the application Mehilli wrote that he had entered the United States on December 5, 2000. However, he also noted that Mehilli admitted testifying falsely under oath to the initial IJ. The IJ found, based on these facts and his observations of Mehilli's demeanor, that Mehilli was not credible. Since Mehilli had relied largely[3] on his own testimony to prove his date of

---

[3] Mehilli also relied implicitly on several Albanian documents he submitted, one of which appeared to be dated December 2000; his claim (though never made clear on the record) seemed to be that the

entry, the IJ found that Mehilli had not established an arrival date and thus had not established that his application was filed within one year of arrival.[4]  The IJ also rejected Mehilli's claim that he should be exempted from the deadline due to extraordinary circumstances -- specifically, ineffective assistance of counsel -- because Mehilli had not complied with the regulatory requirements for making such a claim.

Nonetheless, the IJ proceeded, in the alternative, to consider Mehilli's asylum claim, and other claims for relief, on their merits.[5]  The IJ pointed to a number of inconsistencies in Mehilli's story.  These included, inter alia, (1) that Mehilli's

---

documents' existence demonstrated that he was still in Albania in late 2000.  However, the IJ explicitly found that the documents were "not genuine"; he noted that the documents were not properly authenticated and that someone apparently had attempted to alter one of the documents by writing over the printed date with a pen.

[4]  The IJ found Mehilli's explanation for his false testimony -- that he had been told not to reveal the existence of the "Marko Brezar" documents -- not credible.

[5]  An asylum applicant bears the burden of establishing eligibility by proving he or she is a "refugee" -- that is, by proving past persecution or a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  "[I]n order to establish refugee status, an alien must support his claim of persecution through credible testimony."  Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005).  Because withholding of removal places a higher burden of proof on the applicant than does asylum, failure to carry the burden for asylum necessarily dooms a withholding claim.  See, e.g., Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005).  As to CAT protection, an applicant must show that he or she "more likely than not . . . would be tortured if removed."  8 C.F.R. § 208.16(c)(2).

testimony as to the search was at sharp variance with affidavits in which he said twenty soldiers tore his house apart and pushed him, his wife, and his children; and (2) that his wife's testimony that she never fell during the kidnapping attempt contradicted Mehilli's statement in an affidavit that she was pushed to the ground. Based on the inconsistencies and on Mehilli's initial false testimony, the IJ again found Mehilli not credible.

Further, the IJ found that even assuming Mehilli was credible, Mehilli had not proved persecution. He found that the harms Mehilli described were not serious enough to constitute past persecution, and that even if they were, Mehilli had not established a nexus with a protected ground. As to fear of future persecution, the IJ found that Mehilli had offered no proof; he noted that Mehilli's family continued to live safely in Albania and that his bakery continued to operate without apparent problems. As to withholding of removal and CAT protection, the IJ found that Mehilli's inability to meet the burden for asylum doomed his withholding claim and that Mehilli had failed to adduce any evidence of torture.

Mehilli appealed to the BIA, arguing that the IJ's findings had been erroneous and that his consideration of Mehilli's false testimony constituted a denial of fundamental fairness. On December 17, 2004, the BIA affirmed using its "adoption and affirmance" procedure. It noted that Mehilli's fundamental

fairness argument was meritless because the IJ did not err in considering Mehilli's "admittedly false testimony."

Mehilli did not seek judicial review of that decision. Instead, he moved for reconsideration. On February 24, 2005, the BIA denied the motion. Mehilli timely petitioned for review of this denial.

## II.

On appeal, Mehilli makes two primary arguments. First, he says the BIA should have reconsidered his case because the second IJ improperly characterized his false testimony before the initial IJ as perjury; he argues that that characterization "so impermissibly burdened the evaluation of [his] credibility and the authentication of his documents so as to implicate fundamental fairness principles."[6] Second, he argues that the IJ relied heavily on State Department reports concerning improving conditions in Albania and that this reliance "precluded discrete consideration of the Petitioners' particular circumstances of persecution." The

---

[6] Mehilli also argues that he was denied fundamental fairness because the IJ incorrectly found that his documents had to meet the authentication requirements of 8 C.F.R. § 287.6(b), which applies to documents from nations not signatory to the Hague Convention on Abolishing the Requirement of Legalization for Foreign Public Documents, Oct. 5, 1961, 33 U.S.T. 883, 527 U.N.T.S. 189. Mehilli's argument is that while it is true that Albania was not a signatory at the time of his hearings before the IJ, "in practice" the U.S. Embassy in Tirana treated Albania as if it were. This argument has no merit: 8 C.F.R. § 287.6 contains no such exception for Albanian documents, and Mehilli presents no evidence that such an exception exists.

government, meanwhile, argues that under 8 U.S.C. § 1158(a)(3), this court lacks subject matter jurisdiction to review the BIA's refusal to reconsider its decision that Mehilli's asylum claim was time-barred; as to the other relief, the government argues there was no abuse of discretion in denying reconsideration.

**A. Jurisdiction Over Denial of Motion to Reconsider as to Asylum**

Two jurisdiction-limiting statutes are at play. The first, 8 U.S.C. § 1158(a)(3), enacted in 1996,[7] provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." This limitation refers, inter alia, to determinations as to whether the applicant complied with the one-year filing deadline for asylum, id. § 1158(a)(2)(B), and as to whether extraordinary circumstances excuse an alien's belated filing, id. § 1158(a)(2)(D).

The second provision was added in 2005. As part of the REAL ID Act, Congress reframed the limits on jurisdiction to provide an exception:

> Nothing in subparagraph (B) or ©, or in any other provision of [the Immigration and Nationality Act] (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

---

[7] See Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, § 604, 110 Stat. 3009-691.

REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1)(A)(iii), 119 Stat. 231-310 (codified at 8 U.S.C. § 1252(a)(2)(D)); see also Sena v. Gonzales, 428 F.3d 50, 52 (1st Cir. 2005) (per curiam) (citing § 106(a)(1)(A)(iii) and concluding that the court had jurisdiction because constitutional and legal questions were presented).

These provisions present two questions. The first is whether a denial of reconsideration -- as opposed to the initial BIA decision on appeal from the IJ -- is a decision "under paragraph (2)" of § 1158(a) such as to strip this court of jurisdiction. Second, if we answer that question in the affirmative, we must examine whether jurisdiction has been restored by § 1252(a)(2)(D).

1. Section 1158(a)(3) and Motions for Reconsideration

As to the first question, we hold that Mehilli has not gained a right to judicial review of the BIA's timeliness determination that he would not have had on a petition from an initial rejection by waiting and then attacking a denial of reconsideration of the same issue. Recognition of jurisdiction in these circumstances would circumvent both the purposes of the jurisdictional limitation and the purposes of reconsideration. This is also the conclusion reached by other circuit courts that have addressed the issue under related statutory provisions. See Rodriguez v. Ashcroft, 253 F.3d 797, 800 (5th Cir. 2001) ("[I]f we are divested of jurisdiction to review an original determination by

-12-

the Board . . . we must also be divested of jurisdiction to review the Board's denial of a motion to reopen [on the same grounds.]"); see also Mariuta v. Gonzales, 411 F.3d 361, 364-65 (2d Cir. 2005) (where an order denying a motion to reopen is based on an evaluation of the right to the underlying relief sought, the order is "under" the statute controlling the underlying relief); Durant v. U.S. INS, 393 F.3d 113, 115 (2d Cir. 2004) (orders of removal and denials of motions to reopen "are sufficiently connected" that permitting review of the latter when the INA bars review of the former "would provide an improper backdoor method of challenging a removal order"); Pilch v. Ashcroft, 353 F.3d 585, 587 (7th Cir. 2003) (applying an INA jurisdictional bar to denial of a motion to reopen where petitioners' "principal claim" rested on a decision entrusted to the discretion of the Attorney General).[8] This leaves

---

[8] The government suggests in its brief that the Ninth Circuit took a contrary position in Medina-Morales v. Ashcroft, 371 F.3d 520 (9th Cir. 2004). It is true that Medina-Morales held that a judicial review bar imposed by the INA –- specifically, 8 U.S.C. § 1252(a)(2)(B)(I) –- did not apply to review of a BIA denial of a motion to reopen. 371 F.3d at 527. Nonetheless, we doubt Medina-Morales is in conflict. There, petitioner initially applied for adjustment of status, then abandoned the claim, and later moved to reopen to reassert it. Id. at 524. The BIA denied his motion to reopen. Id. The Ninth Circuit concluded that it had jurisdiction despite the general statutory bar on review of adjustment-of-status determinations. It reasoned that since petitioner had abandoned his adjustment-of-status claim, the IJ had never ruled on adjustment of status at all. Id. at 527. Therefore, the denial of reopening was not a decision "under" the adjustment-of-status provision, but instead a decision "under" the provision that had provided grounds for petitioner's removal –- a provision over which the court had jurisdiction. Id. Medina-Morales thus is compatible with the proposition that when an order denying reconsideration

-13-

the question of the effect of the REAL ID Act's redefinition of the jurisdictional limitation.

## 2. **The Effect of Section 1252(a)(2)(D)**

The relevant provision, 8 U.S.C. § 1252(a)(2)(D),[9] states in relevant part that "[n]othing in subparagraph (B) or ©, or in any other provision of [the INA] (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law." Under the terms of this limited jurisdictional grant, "discretionary or factual determinations continue to fall outside the jurisdiction of the courts of appeals," Vasile v. Gonzales, 417 F.3d 766, 768 (7th Cir. 2005), and BIA findings as to timeliness and changed circumstances are usually factual determinations, see Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005); Ramadan v. Gonzales, 427 F.3d 1218, 1222 (9th Cir. 2005). Here the untimeliness finding was a factual one, based on Mehilli's lack of credibility.

Mehilli, however, makes what he purports to be a constitutional argument as to the timeliness finding. He argues that (1) the second IJ's characterization of Mehilli's false

---

engages a previous decision "under" a given provision, the order is also a decision "under" that underlying provision.

[9] The subsection took effect immediately upon enactment in May 2005 and "appl[ies] to cases in which the final administrative order of removal . . . was issued before, on, or after the date of the enactment." REAL ID Act § 106(b).

-14-

statements before the first IJ as "perjury" was incorrect because Mehilli withdrew the false statements, and therefore they did not constitute perjury as a legal matter, and (2) the perjury characterization so infected the second IJ's credibility determination as to render the decision as to timeliness, and the proceedings in general, fundamentally unfair and a violation of due process requirements.

The argument fails to bring Mehilli's asylum claim within the REAL ID Act exception. A claim would at least have to be colorable for the exception to apply. As the Ninth Circuit has said in a related context:

> [A] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an . . . argument in constitutional garb. . . . [T]o invoke our jurisdiction, a petitioner must allege at least a colorable constitutional violation. To be colorable in this context, the alleged violation need not be substantial, but the claim must have some possible validity.

Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2001) (citations omitted) (quoting Flores-Miramontes v. INS, 212 F.3d 1133, 1135 n.3 (9th Cir. 2000); and United States v. Sarkisian, 197 F.3d 966, 983 (9th Cir. 1999)) (internal quotation marks omitted). Torres-Aguilar noted that any other outcome "would allow [aliens] to circumvent clear congressional intent to eliminate judicial review." Id. We do not have to decide now how strong a showing of a constitutional claim is needed to give us jurisdiction.

-15-

Mehilli's argument is not even colorable: a routine credibility finding by an IJ reasonably based on false statements by an applicant cannot possibly raise a due process "fundamental fairness" argument. The argument is frivolous.[10]

Further, to the extent Mehilli's brief may be read as arguing (1) that, as to credibility, the IJ incorrectly weighed the evidence, failed to explicitly consider certain evidence, or simply reached the wrong outcome, and (2) that that purported error constituted a due process violation, Mehilli still fails to state a colorable constitutional claim within the ambit of § 1252(a)(2)(D). As we have held, such arguments are not properly viewed as constitutional challenges at all, but instead as simple claims that substantial evidence did not support the IJ's credibility finding. See Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2001) (stating that petitioner's argument that the IJ "improperly overlooked evidence" and in so doing violated petitioner's due process rights "is, in our view, just a variation on a substantial evidence challenge, and so we apply the usual substantial evidence standard"); see also Kalitani v. Ashcroft, 340 F.3d 1, 5 (1st Cir. 2003) ("Kalitani's [due process] argument boils down to an assertion that the IJ should have believed her. But the

_____

[10] The argument would still fail for this reason even if it had been presented on a direct petition for review. Mehilli gains no further rights to review by making the argument on a motion for reconsideration.

-16-

IJ was not compelled to believe her, and substantial evidence . . . supports his decision not to do so.").

## B. Withholding of Removal and CAT Protection

There is no question that we have jurisdiction over the denial of reconsideration as it relates to the withholding of removal and CAT claims.  We review BIA decisions on motions to reconsider solely for abuse of discretion.  Hossain v. Ashcroft, 381 F.3d 29, 31 (1st Cir. 2004).  "In the reconsideration context, we will find an abuse of discretion if the denial was made without a 'rational explanation, inexplicably departed from established policies, or rested on an impermissible basis' (such as race)." Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003) (quoting Nascimento v. INS, 274 F.3d 26, 28 (1st Cir. 2001)).

In its denial of reconsideration, the BIA stated that it was "not persuaded" that the BIA relied too heavily on country condition reports about Albania prepared by the State Department. It also stated that (1) the IJ properly found that Mehilli was not credible, (2) the IJ properly found that even if Mehilli were credible the incidents he described did not constitute persecution, (3) it saw "no basis" to disturb its finding that Mehilli's hearing was fundamentally fair, and (4) Mehilli had demonstrated no error of fact or law in the BIA's prior decision.

There was no abuse of discretion.  In the end, Mehilli's own testimony was supportably found not credible.  His two

-17-

arguments on reconsideration -- fundamental fairness and over-reliance on country condition reports -- do not undercut that finding.  That ends the matter.  <u>See</u> <u>Settenda</u> v. <u>Ashcroft</u>, 377 F.3d 89, 93 (1st Cir. 2004) ("The IJ's well documented finding that Settenda failed to support his application for asylum and withholding with credible testimony dooms his claim on appeal.").

**III.**

The petition for review is <u>denied</u>.