# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2145

_____

Poniman Poniman,                          *
                                          *
          Petitioner,                     *
                                          *   Petition for Review of a
     v.                                   *   Final Decision of the
                                          *   Board of Immigration Appeals.
Alberto Gonzales, Attorney General        *
of the United States of America,          *
                                          *
          Respondent.                     *

_____

Submitted: December 11, 2006
Filed: April 2, 2007

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Poniman Poniman (Poniman), a Christian native and citizen of Indonesia, petitions this court for review of the decision of the Board of Immigration Appeals (BIA) denying Poniman's motion to reopen his removal proceedings on the basis of new, previously unavailable evidence regarding changed conditions in Indonesia. Finding no abuse of discretion, we deny the petition for review.

## I. BACKGROUND

Poniman was born in 1972 near the village of Mahalaan, Indonesia, within the Mamasa district on the southern portion of the island of Sulawesi. Poniman grew up on his family's farm in that same region of Sulawesi among other Christians. Because Poniman did not feel safe anymore as a Christian in Indonesia, he left the country and on March 15, 1996, entered the United States as a non-immigrant visitor.

Poniman remained in the United States beyond the authorized period of stay, and on April 11, 2003, he was charged with being an alien subject to removal for remaining in the United States for a time longer than permitted. Poniman conceded he was deportable and requested asylum, withholding of removal, and protection under the Convention Against Torture (CAT). After a hearing on the merits of Poniman's application for relief, the Immigration Judge (IJ) determined Poniman was ineligible to apply for asylum because Poniman neither timely filed his asylum application nor demonstrated excuse for his delay. The IJ also denied withholding of removal and relief under the CAT, but granted Poniman the privilege of voluntary departure. Poniman appealed the IJ's decision. On November 16, 2005, the BIA adopted and affirmed the IJ's decision, and dismissed the appeal.[1]

In January 2006, Poniman timely filed a motion with the BIA to reopen his removal proceedings, asserting he had new evidence of changed conditions in portions of Sulawesi Island in Indonesia, more specifically in his home district of Mamasa, resulting from an outbreak of violence and widespread attacks against Christians living there. Poniman alleged, "Radical Muslims in Polewali Mamasa Regency, part of the newly inaugurated West Sulawesi province in Indonesia, have threatened [his] family members, destroyed houses, churches and other property, and displaced his family since his asylum hearing." Such attacks, Poniman argued, were perpetrated by militant anti-Christian groups, which the Indonesian government either was

_____

[1]Poniman did not petition this court for direct review of the BIA's removal decision.

"unwilling or unable to control." According to Poniman, his "home in the remote Mamasa district of West Sulawesi has become part of the deadly religious conflict," and his family cannot return to their home due to the presence of outside fighters who continue to operate in the region. Poniman alleged the Mamasa region and nearby areas are unsafe and are surrounded by Islamic troops. Poniman also indicated Islamic militants threatened to kill his brother, if his brother and family did not leave Mamasa.

In support of his motion, Poniman submitted, among other things, an affidavit from his brother Arnol Karel (Karel), who stated that in October 2004, during the time of Poniman's removal hearing, Poniman's family members were forced to flee their village of Mahalaan in the Mamasa district following an outbreak of violence arising from a dispute over the formation of a new local authority district. Karel's affidavit declared, "The religious conflict in nearby Poso has made it impossible for our remaining family members in Indonesia to return to the farm." Additionally, in a letter dated December 20, 2005, several of Poniman's siblings in Indonesia indicated their areas were not safe as a result of violence perpetrated by Islamic troops, and stated Christians living in certain areas, including Mamasa, were facing eradication. The letter discussed the existence of "deep religious conflict" since the 2002 subdivision of Polewali Mamasa County into Muslim Polewali County and Christian Mamasa County. The letter further stated Poniman's siblings cannot flee to other places because of their accents and cultural ways, and do not know when they will be able to return to their home. Poniman also accompanied his motion to reopen with several articles detailing the outbreak of violence against Christian Indonesians and the tension between Christians and Muslims in Indonesia.

The BIA denied Poniman's motion to reopen, finding the new evidence Poniman submitted failed to demonstrate a prima facie case for withholding of

removal and protection under the CAT.[2] The BIA concluded Poniman's new evidence did not indicate Poniman "would be unable to relocate within [another region of] Indonesia to avoid future threats to his life or freedom, or that it is more likely than not that [Poniman] would be tortured by or with the acquiescence of" the Indonesian government.

Poniman petitioned for review of the BIA's denial of his motion to reopen, and contends the BIA abused its discretion by dismissing Poniman's new evidence regarding the religious conflict and outbreak of violence targeting Poniman's family and other Christians in Mamasa, and by failing to apply the factors set forth in 8 C.F.R. § 1208.16(b)(3) in evaluating the reasonableness of internal relocation.

## II.    DISCUSSION

We review for abuse of discretion the denial of a motion to reopen immigration proceedings. Gebremaria v. Ashcroft, 378 F.3d 734, 738 (8th Cir. 2004). "An abuse of discretion occurs if a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claims." Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997).

"A motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Given the strong public interest in bringing litigation to a close, motions to reopen generally are disfavored "because '[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough

---

[2]The BIA also held that the evidence accompanying Poniman's motion to reopen did not address the IJ's determination that Poniman's asylum application was untimely under 8 U.S.C. § 1158(a)(2)(B). Poniman does not challenge this conclusion in his opening brief.

to continuously produce new and material facts sufficient to establish a prima facie case.'" Gebremaria, 378 F.3d at 737 (alteration in original) (quoting INS v. Abudu, 485 U.S. 94, 108 (1988)).  The Supreme Court has noted at least three independent grounds on which the BIA may deny a motion to reopen: (1) failure by the movant to establish a prima facie case for the underlying substantive relief sought; (2) failure by the movant to introduce previously unavailable, material evidence; or (3) a determination the movant would not be entitled to the discretionary relief sought. Abudu, 485 U.S. at 104-05.

To be eligible for withholding of removal, the applicant must demonstrate it is more likely than not his life or freedom would be threatened in the proposed country of removal "on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 C.F.R. § 1208.16(b)(2); see, e.g., INS v. Stevic, 467 U.S. 407, 429-30 (1984); Surya v. Gonzales, 454 F.3d 874, 878 (8th Cir. 2006). Additionally, to be eligible for withholding of removal under the CAT, the applicant must show it is more likely than not he would be tortured in the country of removal. 8 C.F.R. § 1208.16(c)(2).  For withholding of removal and the CAT, the applicant cannot meet his burden if the applicant could avoid a future threat to his life or freedom by relocating to another part of the country and it would be reasonable to expect the applicant to do so.  Id. § 1208.16(b)(2), (c)(3)(ii).  In determining whether it would be reasonable to expect the applicant to relocate, "adjudicators should consider, among other things, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties."  Id. § 1208.16(b)(3).

When the applicant has not established past persecution, the applicant bears the burden of establishing relocation would be unreasonable.  Id. § 1208.16(b)(3)(I); see, e.g., Mohamed v. Ashcroft, 396 F.3d 999, 1006 (8th Cir. 2005).  Because Poniman has

not established he suffered past persecution, Poniman must show relocating within Indonesia would be unreasonable.

Although the BIA's opinion denying Poniman's motion to reopen does not engage in a rote recitation of the factors set forth in § 1208.16(b)(3), the BIA ultimately concluded Poniman failed to address the IJ's finding Poniman could relocate within Indonesia. Following our thorough review of the record, we agree with the BIA's conclusion. Poniman's motion to reopen speaks only to changed circumstances and increased violence against Christians by radical Muslim forces in Poniman's home region of Mamasa and the surrounding Sulawesi Island areas. Poniman's motion makes no mention of whether relocation elsewhere within Indonesia would be unreasonable. For instance, our review of the record reveals no evidence the North Sulawesi region (which is characterized as being "mainly Christian" in at least one article submitted by Poniman in support of his motion) is unsafe for Christians such as Poniman. Absent a showing that relocation to North Sulawesi or other regions within Indonesia would be unreasonable, we are left to speculate about the potential violence Poniman might endure, a standard insufficient to satisfy Poniman's burden under § 1208.16(b)(3)(i).[3]

We recognize the record reflects a certain degree of unrest in Poniman's home region of Mamasa. But, in the absence of credible and substantial evidence concerning the impossibility or unreasonableness of internal relocation, an issue on which Poniman bore the burden to demonstrate a prima facie case, we conclude the BIA did not abuse its discretion in denying Poniman's motion to reopen.

---

[3]We also note another article submitted by Poniman in support of his motion to reopen characterized the conflict in Mamasa as being "administrative, rooted primarily in the desire of local officials for personal gain," and discounted the notion the conflict was caused by religious, cultural, or ethnic differences. Such evidence weakens Poniman's ability to put forth a prima facie case demonstrating his eligibility for withholding of removal under 8 C.F.R. § 1208.16.

## III.  CONCLUSION

We deny Poniman's petition for review.

_____