# United States Court of Appeals
## For the First Circuit

No. 07-2168

MCCARTHY LARNGAR,

Petitioner,

v.

ERIC H. HOLDER, JR.,* Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Stahl and Howard,
Circuit Judges.

Randy Olen, for petitioner.
Gregory G. Katsas, Assistant Attorney General, Terri J. Scadron, Assistant Director, and Anthony W. Norwood, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Civil Division, on brief for respondent.

April 6, 2009

---

*Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr. is substituted for former Attorney General Michael B. Mukasey as the respondent herein.

**HOWARD, <u>Circuit Judge</u>.** The central question in this case is whether we have jurisdiction to review the denial of the petitioner's untimely motion to reopen his removal proceedings.

The Board of Immigration Appeals (BIA) denied the motion to reopen after determining that the petitioner McCarthy Larngar, who is an aggravated felon, failed to demonstrate changed country circumstances that would excuse his untimely filing, and failed to establish a prima facie case of eligibility for the relief he was seeking -- protection under the Convention Against Torture. The government contends that the BIA's determination on the changed circumstances issue is factual in nature and that we lack jurisdiction to review such determinations in cases involving aggravated felons. <u>See</u> 8 U.S.C. § 1252(a)(2)(C),(D) (limiting our jurisdiction in such cases to review of constitutional claims or questions of law).

After careful consideration, we remand to the BIA for further consideration.

## I. <u>Facts</u>

### A. Background

McCarthy Larngar is a native and citizen of Liberia. He entered the United States in 1982 at the age of seven and has remained here since. In 1997, Larngar was convicted in Rhode Island state court of carrying a handgun without a license and assaulting a person with a dangerous weapon, the latter qualifying

-2-

as an "aggravated felony" as defined by 8 U.S.C. § 1101(A)(43)(F). The victim of the assault, Ashford Peal, is also a Liberian citizen.

For his crimes, Larngar was sentenced in 1998 to twenty years imprisonment, twelve of which were to be served. Removal proceedings were initiated in 2001, charging Larngar with removability on the basis of his aggravated felony conviction. 8 U.S.C. § 1227(a)(2)(a)(iii). Larngar conceded removability and sought relief from removal under the Convention Against Torture (CAT). In support of his CAT application, Larngar testified that a number of his relatives had been either persecuted or killed in Liberia and that his grandfather had been granted asylum in the United States. The IJ determined that Larngar failed to carry his burden under the CAT. In December 2002, the BIA affirmed the IJ's decision and dismissed Larngar's appeal.

Over four years later, in January 2007, Larngar filed a motion to reopen with the BIA. Because the motion to reopen was untimely -- under 8 C.F.R. § 1003.2(c)(2) such motions must be filed within ninety days of the issuance of the final administrative decision in the case -- Larngar relied on the exception to the timeliness requirement provided by 8 C.F.R. § 1003.2(c)(3)(ii). This exception serves to excuse a late filing if the applicant is able to establish "changed circumstances arising in the country of nationality or in the country to which

deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."

The "changed circumstance" Larngar identified in his motion was the appointment of Ashford Peal, the victim of his assault, to a position of authority in the Liberian government. Specifically, in 2005, over two years after the BIA's final administrative decision in Larngar's case, Peal had been appointed the Deputy Director of the Special Security Service ("SSS") in Liberia -- a "large, heavily armed executive protective force." In support of his motion, Larngar submitted evidence that Peal had repeatedly threatened Larngar with severe harm or death both prior to and after his rise to power.[1] Larngar contended that Peal's ascension to a position of government authority was a changed circumstance that materially affected his CAT claim because Peal now had the capacity and resources to follow through on his threats.

The BIA denied Larngar's motion, concluding that the changed circumstances exception was inapplicable. Although acknowledging that Larngar's motion to reopen was based on previously unavailable evidence, the BIA determined that Larngar had identified only a change in personal circumstances rather than

---

[1] This evidence consisted of affidavits from Larngar, Larngar's mother, and two members of the SSS itself.

-4-

a change in country circumstances. The BIA reasoned that "[T]he respondent's fear of torture or other harm arose as a result of his personal circumstances in the United States. Namely, the victim of the respondent's felonious assault wants revenge . . . a change in the respondent's personal circumstances does not entitle him to invoke the exception set forth in federal regulations at 8 C.F.R. § 1003.2(c)(3)(ii)."[2]

## B.  The second motion to reopen

In June 2007, Larngar filed a second motion to reopen -- the focus of this appeal. Because this motion was similarly untimely, as well as being successive, the burden remained on Larngar to establish the applicability of an exception. Again relying on the changed country circumstances exception, Larngar introduced the same evidence, reiterating the alleged threat that Peal posed to him. But Larngar also identified an additional change in Liberia -- Peal's reinstatement to his position as Deputy Director of the SSS.[3]

---

[2] Although this was the primary reason the BIA offered for denying Larngar's motion to reopen, the Board also concluded that, had it "considered the merits of [Larngar's] torture claim" it still would have denied his motion. The BIA observed that Peal had recently been suspended from his government position and that, as a result, Larngar could not show that he would be tortured at the hands of the Liberian government if returned to Liberia.

[3]  The nature of Peal's current position in the government of Liberia, if any, is not before us.

The BIA again denied Larngar's motion to reopen. Although acknowledging that Larngar's evidence established that Peal had been reinstated to his government position, the BIA again determined that Larngar failed to establish a change in country circumstances arising in Liberia. In so determining, the BIA relied on its previous decision denying Larngar's first motion to reopen, reasoning that Larngar had merely identified a change in personal circumstances and that such a change was insufficient to qualify him under the changed country circumstances exception.

After determining that the exception was inapplicable, the BIA also identified an additional reason for denying Larngar's motion: "Moreover, the respondent's filing is insufficient to support reopening on the likelihood of it being found 'more likely than not' that the respondent would be tortured at the hands of a government official if returned to Liberia." This timely petition for review followed.

## II.  Discussion

"We review the BIA's denial of a motion to reopen under a deferential abuse of discretion standard," Fustaquio do Nascimento v. Mukasey, 549 F.3d 12, 15 (1st Cir. 2008), and ordinarily we will uphold the denial "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way," Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007).

-6-

An applicant's ability to file a motion to reopen is ordinarily limited both numerically and temporally. Fustaquio do Nascimento, 549 F.3d at 15-16. An applicant may typically file only one motion to reopen a removal proceeding and must file that motion within ninety days of the issuance of the final administrative decision in the case. Id. at 16. Nevertheless, there are exceptions to these bars. See 8 C.F.R. § 1003.2(c)(3). For example, the BIA may excuse a successive or late motion to reopen if a petitioner can establish that changed circumstances have arisen in the country of nationality or in the country to which deportation has been ordered. Id. at § 1003.2(c)(3)(ii). The evidence of changed circumstances must be material to the underlying substantive relief that the petitioner is seeking and must have been unavailable during the prior proceedings. Id.; Raza, 484 F.3d at 127.

Even if a motion satisfies these procedural requirements, or otherwise qualifies under an applicable exception, the BIA may yet deny a motion to reopen if it determines that the movant has not established a prima facie case of eligibility for the substantive relief sought. INS v. Abudu, 485 U.S. 94, 104 (1988) (recognizing three independent grounds for denying a motion to reopen, including the movant's failure to establish a prima facie case for the substantive relief sought); see also Shardar v. Att'y Gen. of the United States, 503 F.3d 308, 313 (3d Cir. 2007)

-7-

(observing that the requirement that a movant establish a prima facie case for the substantive relief sought is a "substantive" hurdle).

## A. Changed circumstances

The first, and main, question is whether we have jurisdiction to review the BIA's denial of Larngar's motion to reopen. The government's sole argument is that we lack jurisdiction in this case because the BIA's denial of Larngar's motion to reopen rested on a purely factual determination, specifically, that he failed to establish that changed circumstances arising in Liberia excused the untimely and successive filing of his motion to reopen.

We generally lack jurisdiction to review any final order of removal against an alien who is removable because he committed a "covered" criminal offense. Id. at § 1252(a)(2)(C). Among the covered criminal offenses are aggravated felonies, id. at § 1227(a)(2)(A)(iii). Larngar concedes that he was convicted of an aggravated felony.

Although our review is limited, we nevertheless retain jurisdiction to consider constitutional claims or questions of law. Conteh v. Gonzales, 461 F.3d 45, 63 (1st Cir. 2006) (noting that the REAL ID Act of 2005, 8 U.S.C. § 1252(a)(2)(D), softens the jurisdiction stripping provision of § 1252(a)(2)(C) by "allowing review of constitutional claims or questions of law raised upon a

-8-

petition for review filed with an appropriate court of appeals." (citation and internal quotation marks omitted)). As stated, this limited jurisdictional grant does not permit us to review claims premised on alleged factual errors. Id.; see also Mehilli v. Gonzales, 433 F.3d 86, 93 (1st Cir. 2005) ("Under the terms of [§ 1252(a)(2)(D)'s] limited jurisdictional grant, 'discretionary or factual determinations continue to fall outside the jurisdiction of the courts of appeals'" (citation omitted)). Thus, in a case involving a final order of removal of an alien who has committed a covered criminal offense, the initial inquiry is whether we are reviewing a claim that is premised on a constitutional or legal determination by the BIA, or one that is premised on a factual determination.

In arguing that the BIA's conclusion that Larngar failed to establish a change in country circumstances was a factual determination, the government relies primarily on Mehilli. In that case, when discussing the REAL ID Act's limited jurisdiction grant, we noted that the BIA's findings concerning "changed circumstances are usually factual determinations." 433 F.3d at 93.[4]

---

[4]   The REAL ID Act's legislative history references a familiar standard of review:

> Factual questions include those questions that courts would review under the "substantial evidence" or 242(b)(4)(B) [codified as 8 U.S.C. § 1252(b)(4)(B)] standard, reversing only when a reasonable factfinder would be compelled to conclude that the decision below was erroneous.

H.R. Rep. No. 109-1268, at H2873 (2005).

Larngar opposes the government's characterization of the BIA's determination. Citing Conteh, Larngar argues that to be factual in nature, the BIA's determination about changed circumstances must involve "factual findings as to credibility, evidentiary weight, [or] satisfaction of a correctly framed burden of proof." See Conteh, 461 F.3d at 44. According to the petitioner, the BIA's determination in this case did not involve any such factual findings.

The BIA concluded that Larngar failed to establish changed country circumstances and thus did not qualify under the exception for untimely motions to reopen. See 8 C.F.R. § 1003.2(c)(3)(ii). Although the BIA did not question the validity of Larngar's proffer -- that Peal had risen to a position of power in Liberia's government and threatened to harm or kill Larngar if he returned to Liberia -- the Board nevertheless categorized this showing as merely evidence of changed personal circumstances. A change in personal circumstances, the BIA reasoned, is insufficient to establish changed country circumstances. See Yuen Jin v. Mukasey, 538 F.3d 143, 151 (2d Cir. 2008) ("[C]hanged personal circumstances are insufficient to excuse an alien from the procedural requirements of a motion to reopen.").

It appears as though the BIA effectively concluded that Larngar failed to satisfy a "correctly framed burden of proof." It is well-established that an applicant bears the burden of

-10-

establishing changed country circumstances for purposes of §
1003.2(c)(3)(ii).  Raza, 484 F.3d at 127.  And here, the BIA
explicitly found that Larngar's proffer was insufficient to
establish changed circumstances arising in Liberia.  See Conteh,
461 F.3d at 63.  In this respect, this case is similar to Conteh,
in which we rejected the petitioner's argument that we had
jurisdiction to review the BIA's finding that he failed to satisfy
the criteria for withholding of removal.  Id.; see also Hanan v.
Mukasey, 519 F.3d 760, 763 (8th Cir. 2008) ("Hanan's due process
argument primarily consists of his claim that the BIA incorrectly
found that [he] did not show changed circumstances to permit the
BIA to consider his untimely motion to reopen.  We reject Hanan's
attempt to characterize a factual question as a constitutional
question.").

We note that some courts have made explicit that
appellate review of a BIA's finding that a party has failed to
establish changed country circumstances is for "substantial
evidence."  See, e.g., Jian Hui Shao v. Mukasey, 546 F.3d 138, 169
(2d Cir. 2008) ("Substantial record evidence clearly supports the
BIA's finding that [the petitioner] failed to demonstrate a
material change [of circumstances arising in China].");  see also
Saintha v. Mukasey, 516 F.3d 243, 249 (4th Cir. 2008)  ("[W]e can
look to the standard of review we would apply if we were to have
jurisdiction to inform whether a given BIA determination is factual

-11-

or legal in nature."). And, as we have observed, the REAL ID Act's legislative history, in distinguishing factual questions from legal ones, categorizes as factual "those questions that courts would review under the 'substantial evidence'" standard. Fn. 4, supra. Finally, as the government points out, in Mehilli we explained that the BIA's findings concerning "changed circumstances are usually factual determinations." 433 F.3d at 93.

Appearances, however, may be deceiving. Based upon our review of the BIA's rationale for its decision, we are concerned that the Board may have conflated its finding that Larngar's fear of torture was self-induced with its conclusion that Peal's ascension to a position of power in Liberia's government was a change in Larngar's "personal circumstances."

Under the case law, a change typically will be categorized as a change in personal circumstances, as opposed to a change in country circumstances, if the change is self-induced. Wei Guang Wang v. B.I.A., 437 F.3d 270, 273-74 (2d Cir. 2006) (concluding that the BIA correctly held that the birth of the petitioner's two children in the United States constituted "changed personal circumstances" rather than changed country circumstances because "self-induced" changes "cannot suffice" to show changed country conditions); see also Ying Liu v. Att'y Gen. of the United States, 555 F.3d. 145, 151 (3d Cir. 2009) (observing that an alien can "control" a change in personal circumstances and giving

-12-

marriage and the birth of children as examples of such changes); De Hong Zheng v. Mukasey, 296 Fed. Appx. 141, 142 (2d Cir. 2008) ("It is well-settled that a change in personal circumstances, such as Zheng's newly commenced practice of Falun Gong, does not excuse the time limit for filing a motion to reopen."); Haddad v. Gonzales, 437 F.3d 515, 517 (6th Cir. 2006) ("Haddad's divorce was a purely personal change in circumstances that does not constitute changed conditions or circumstances in Jordan."); Bin Zhao v. Gonzales, 440 F.3d 405, 407 (7th Cir. 2005).[5]

---

[5] In each of the cases we have identified, the "self-induced" change in personal circumstance also happened to arise outside the country of nationality or the country to which deportation had been ordered. See, e.g., Li Yong Zheng v. United States DOJ, 416 F.3d 129, 130-31 (2d Cir. 2005) (concluding that the BIA properly held that § 1003.2(c)(3)(ii) did not apply because the petitioner "alleged before the BIA no changed circumstances in China; rather he claimed that his personal circumstances in the United States had changed -- namely his wife had arrived here (illegally) and was pregnant with their second child.").

Larngar latches onto this difference in contending that the change at issue here cannot be categorized as a change in personal circumstances. He notes, "[I]t should be obvious that the appointment (and subsequent reinstatement) of Mr. Peal as Deputy Director of the SSS in Liberia is a change in country conditions in Liberia." (emphasis in original).

We think it likely, however, that the categorization of a change as "personal" turns on the petitioner's responsibility for the change rather than the location of the change. See Wei Guang Wang, 437 F.3d at 274 (rejecting the petitioner's motion to reopen his case based on changed country circumstances because the alleged change was "entirely of his own making"). Accordingly, we assume without deciding that even in cases where a change has arisen "in the country of nationality or the country to which deportation has been ordered" the change may nonetheless fail to qualify under § 1003.2(c)(3)(ii) because the change was self-induced.

That a change in personal circumstances should not qualify as a change in country circumstances makes sense -- if the rule were otherwise, applicants could move to reopen by changing circumstances within their control. See Wei Guang Wang, 437 F.3d at 270 ("[I]t would be ironic, indeed, if petitioners like Wang . . . were permitted to have a second and third bite at the apple simply because they managed to marry and have children.").

But it does not appear to us that anything about the change that Larngar identifies -- Peal's ascension to power in Liberia -- was self-induced. The evidence that Larngar has submitted in support of his motion to reopen, makes plain that he played no role in Peal's official ascension in Liberia.

The BIA's decision does not suggest otherwise, at least with respect to Peal's officeholding. Rather, the BIA characterizes Peal's ascension as a change in Larngar's personal circumstances because Larngar was at least partially responsible for the alleged threat that Peal posed to him. Quoting its previous decision denying Larngar's first motion to reopen, the BIA reasoned, "'[T]he respondent's fear of torture or other harm arose as a result of his personal circumstances in the United States. Namely, the victim of the respondent's felonious assault wants revenge . . . a change in the respondent's personal circumstances does not entitle him to invoke the exception set forth in federal regulations at 8 C.F.R. § 1003.2(c)(3)(ii).'"

But the change that Larngar has identified in support of his late motion to reopen is Peal's rise to a position of authority in Liberia's government. To be sure, any motive Peal may have to harm Larngar was created by Larngar himself. But it is not accurate to characterize this as a "change" at all, much less a change in personal circumstances. From the moment Larngar assaulted Peal, Peal may have had an interest in seeking revenge. Nothing has changed about that. What has changed is Peal's ability to dispense this revenge through his official capacity, something Larngar had and has no control over. See Shardar, 503 F.3d at 313 (determining that petitioner established a change in country circumstances where he introduced evidence that a regime change in the country of nationality materially affected his asylum claim).[6]

Nor does it appear that the BIA's categorization of the change Larngar identifies as a change in personal circumstances furthers the policy interest behind the personal circumstances rule -- preventing applicants from orchestrating changes that serve their self-interest. Given the alleged threats Peal had made against Larngar's life prior to Peal's ascension to a position of

---

[6] The parties have cited no administrative or judicial decisions, and we have found none, barring the applicability of § 1003.2(c)(3)(ii) on the same or similar grounds as the Board used here.

government authority in Liberia, Peal's rise was directly contrary to the petitioner's self-interest.[7]

Because of the BIA's apparent conflation of separate inquiries, we are concerned that the Board may not have applied "a properly framed burden of proof," see Conteh, 461 F.3d at 44 (emphasis added), when it impliedly concluded that, regardless of whether the petitioner induced the changed circumstances or not, so long as the petitioner originally induced the reason for his fear of harm he cannot establish changed country circumstances. On this record we are unable to discern whether the BIA, with a proper understanding of what may constitute a change in country circumstances, would have concluded that Larngar's showing was insufficient to satisfy § 1003.2(c)(3)(ii)'s exception. We will therefore vacate the denial of the motion to reopen, and remand so that the Board may reevaluate Larngar's showing. Because, however, the BIA also rested its denial of Larngar's motion to reopen on an alternative ground -- his failure to make out a prima facie case for relief under the CAT -- we will say a few words about that ground.

---

[7] The government does not directly address Larngar's argument that the change he identifies constitutes a change in country circumstances rather than a change in personal circumstances. Instead, its only position appears to be that, however the BIA categorized the change, its ultimate determination with respect to changed circumstances was factual in nature and thus was insulated from our review. As our analysis above indicates, we lack confidence that the BIA applied a proper legal standard.

**B. Prima facie case for eligibility under the CAT**

Even where a party filing an untimely motion to reopen can qualify under an exception that excuses the late filing, an agency may still deny the motion if the evidence fails to "establish a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief." Raza, 484 F.3d at 128; Jian Hui Shao, 546 F.3d at 168; Poniman v. Gonzales, 481 F.3d 1008, 1011 (8th Cir. 2007).

Here, Larngar is seeking relief under the CAT. As a general matter, to establish eligibility for CAT protection, a petitioner must show that it is more likely than not that he will be tortured upon return to his country. Khan v. Mukasey, 549 F.3d 573, 575 n.2 (1st Cir. 2008). To establish a prima facie case for relief under the CAT, however, the applicant need only produce objective evidence showing a "reasonable likelihood" that he can establish that he is more likely than not to be tortured. Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002); see also Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004).[8]

In this case, the agency appears to have concluded -- independent of its analysis with respect to the existence of

---

[8]  We have described torture as:  "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Romilus, 385 F.3d at 8 (citations omitted).

changed country circumstances -- that Larngar failed to establish a prima facie case of eligibility for protection under the CAT. Specifically, the BIA remarked that "the respondent's filing is insufficient to support reopening on the likelihood of it being found 'more likely than not' that the respondent would be tortured at the hands of a government official if returned to Liberia." This alternative and independently dispositive ruling again places the jurisdictional issue at center stage.

In cases such as this one, where our jurisdiction is limited to review of legal determinations, we have never explicitly addressed whether the BIA's determination that an applicant has failed to make out a prima facie case for substantive relief is typically legal or factual in nature. Compare Mehilli, 433 F.3d at 93 ("changed circumstances are usually factual determinations.").

We strike a familiar refrain. Under Conteh, the question of whether a party has established prima facie eligibility for relief under the CAT could be characterized as, at bottom (and reminiscent of our analysis of the first jurisdictional issue in this case), a question about whether a party has satisfied a "correctly framed burden of proof." See Conteh, 461 F.3d at 44; EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 603 (1st Cir. 1995) ("We agree with the district court that the EEOC carried its burden of producing facts sufficient to limn the three elements essential to its prima facie case.") (internal citation omitted));

-18-

see also In re Grand Jury Proceedings, 417 F.3d 18, 22-23 (1st Cir. 2005) (describing a prima facie showing as "little more than a showing of whatever is required to permit some inferential leap sufficient to reach a particular outcome" (citing Black's Law Dictionary 1228 (8th ed. 2004)); Thomas v. Att'y Gen. of the United States, No. 07-3907, 2009 U.S. App. LEXIS 1362, at *8 (3d Cir. Jan. 22, 2009) (unpublished) (noting the government's argument that "whether the documentary evidence [an applicant] proffered establishes prima facie eligibility . . . is purely a factual determination . . . requir[ing] weighing and evaluation of the evidence . . . [which is] reviewed under the substantial evidence standard.").

Moreover, in the motion to reopen context, a number of courts have reviewed BIA determinations that an applicant has failed to establish prima facie eligibility for the substantive relief sought under a "substantial evidence" standard of review. The cases thus suggest that we lack jurisdiction in this context. See Shardar, 503 F.3d at 313 ("[W]hen [the BIA] denies a motion to reopen on the ground that the applicant has failed to make a prima facie showing [of entitlement to the substantive relief sought], we yet review that determination to ensure that it is supported by substantial evidence") (emphasis added); Toufighi v. Mukasey, 538 F.3d 988, 997 (9th Cir. 2008) (concluding that the BIA's denial of the applicant's motion to reopen because of, among other things,

the applicant's failure to establish a prima facie case for asylum was supported by "substantial evidence") (emphasis added); Poniman, 481 F.3d at 1012 (same); see also Gorvokovic v. Filip, No. 08-0463, 2009 U.S. App. LEXIS 1496, at *2 (2d Cir. Jan. 26, 2009) (unpublished) ("[S]ubstantial evidence supports the BIA's conclusion that [the petitioner] failed to establish prima facie eligibility for . . . relief under the Convention Against Torture ('CAT').").

Ultimately, however, we will not resolve the question here. Even if the BIA's determination that an applicant has failed to make out a prima facie case for substantive relief is typically a factual one, the BIA's treatment of this issue was so summary that we hesitate to reach any conclusions based on this record. Adding to our reluctance to reach this issue, we note that the government does not rely on the BIA's alternative ruling as an additional jurisdictional bar to our review. Nor has Larngar briefed this jurisdictional question. The BIA is free, of course, to take up this issue anew.

### III.  Conclusion

We therefore remand this matter to the BIA to consider, consistent with this opinion, whether Larngar has established a change in country circumstances that would excuse his late filing or whether he has made out a prima facie case of eligibility for protection under the CAT. **So Ordered**.