# United States Court of Appeals
## For the First Circuit

No. 18-1860

MARTA PEREZ-TINO,

Petitioner,

v.

WILLIAM P. BARR,[*] Attorney General,

Respondent.

———————————

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

———————————

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

———————————

Nancy J. Kelly, Esq., with whom John Willshire Carrera, Esq., Maggie Morgan, Esq., and Harvard Law School Immigration & Refugee Clinic at Greater Boston Legal Services, were on brief, for petitioner.

Jacob A. Bashyrov, Trial Attorney, Office of Immigration Litigation, with whom Joseph H. Hunt, Assistant Attorney General, Civil Division, and M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, were on brief for respondent.

———————————

August 30, 2019

———————————

———————————

* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General William P. Barr has been substituted for former Acting Attorney General Matthew G. Whitaker as the respondent.

**BARRON**, **Circuit Judge**.  Marta Perez-Tino is a Guatemalan national of Mayan K'Iche' descent who entered the United States in 2001 without inspection.  Facing the prospect of removal on the basis of a 2010 Board of Immigration Appeals ("BIA") decision denying her asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), Perez-Tino filed a motion to reopen with the BIA years later, on February 28, 2018.  She sought to excuse the untimeliness of that motion on the basis of changed country conditions in Guatemala.  See 8 U.S.C. § 1229a(c)(7)(C)(ii).  The BIA denied her motion to reopen as untimely.  She petitioned for our review, and we now vacate and remand.

## I.

On March 6, 2007, Immigration and Customs Enforcement ("ICE") detained Perez-Tino after a raid on her workplace in New Bedford, Massachusetts.  After the raid, she was briefly detained by ICE in Massachusetts before being transferred to the Port Isabel Detention Center in Texas.  Perez-Tino was served with a notice to appear, which charged that she was inadmissible because she was present in the United States without being admitted or paroled.  See 8 U.S.C. § 1182(a)(6)(A)(i).  She was released on bond that same month and her case was transferred to the Boston Immigration Court that May.

Perez-Tino appeared before the Immigration Court and admitted the factual allegations against her, conceded removability, and indicated that she intended to apply for withholding of removal, protection under the CAT, and voluntary departure. She submitted those applications in September 2007.

In her application for asylum, withholding of removal, and protection under the CAT, she described her grandfather's status as a Mayan community leader and harassment by the "guerrilla and the Civil Patrol," the murders of her uncles "because they were Mayans," and the discrimination from authorities that her mother faced while seeking protection from Perez-Tino's abusive father. She further explained that because of this long history of discrimination and threats based on her family's Mayan ancestry, she feared further harm in Guatemala, especially as a woman who could be sexually targeted.

Perez-Tino appeared before the Boston Immigration Court on April 3, 2009 and testified in support of her application for relief. During that testimony, she stated that her uncles "were killed by the army, by the military" during the Guatemalan civil war. Perez-Tino then asserted that she expected negative treatment from the Guatemalan government if she were forced to return, as the then-president of Guatemala would "not help [indigenous people] at all." Perez-Tino also expressed concern that a return

to Guatemala would leave her unable to "provide for [her] children" and "help [her] mom" because the country was "very poor."

At the close of the hearing, the Immigration Judge ("IJ") found that Perez-Tino's testimony was credible, but nevertheless denied her application for withholding of removal or relief under the CAT. The IJ did, however, grant her request for voluntary departure.

Perez-Tino filed an appeal of the IJ's decision to the BIA, which the BIA rejected on October 7, 2010. The BIA then reinstated the IJ's grant of voluntary departure for a period of sixty days. The United States Citizenship and Immigration Services granted a stay of removal to Perez-Tino, which was repeatedly extended until her last application was denied on November 21, 2017. She was ordered to, and did, report to ICE on February 5, 2018 with an airline ticket to depart the United States by March 5, 2018. At that time, ICE placed Perez-Tino on an ankle monitor.

On February 28, 2018, more than seven years after the BIA's decision, Perez-Tino filed a motion to reopen. In that motion, she seeks to apply for asylum, withholding of removal, and relief under the CAT, despite the lateness of her filing, on the ground that she could satisfy the "changed country conditions" exception to the requirement that a motion to reopen be filed within ninety days, see 8 U.S.C. § 1229a(c)(7)(C)(ii), because the country conditions in Guatemala had changed since the IJ's 2009

- 4 -

decision.  On August 7, 2018, the BIA denied the motion as untimely on the ground that she had failed to make the requisite changed country conditions showing.  Perez-Tino timely petitioned for our review of the BIA's denial of her motion to reopen.

## II.

To prevail on a motion to reopen, the applicant must establish both "a prima facie case for the underlying substantive relief sought" and that the evidence supporting the motion to reopen was "previously unavailable [and] material."  INS v. Abudu, 485 U.S. 94, 104 (1988).  A motion to reopen must generally be submitted less than ninety days after the final administrative decision is issued, 8 U.S.C. § 1229a(c)(7)(C)(i), unless the applicant can demonstrate "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."  Id. § 1229a(c)(7)(C)(ii).

We review a denial of a motion to reopen for abuse of discretion.  INS v. Doherty, 502 U.S. 314, 323 (1992).  "The BIA can abuse its discretion," according to our Court, "by neglecting to consider a significant factor that appropriately bears on the discretionary decision, by attaching weight to a factor that does not appropriately bear on the decision, or by assaying all the proper factors and no improper ones, but nonetheless making a clear

- 5 -

judgmental error in weighing them."  Murillo-Robles v. Lynch, 839 F.3d 88, 91 (1st Cir. 2016) (quoting Henry v. INS, 74 F.3d 1, 4 (1st Cir. 1996)).

Perez-Tino submitted evidence to the BIA that, since the relevant "previous proceeding," 18 U.S.C. § 1229a(c)(7)(C)(ii), conditions in Guatemala had materially worsened for her in three distinct ways.  First, she argued that the "expected deportation to Guatemala" of a former paramilitary commander who she asserted was responsible for atrocities committed against her family during the Guatemalan civil war would result "in an increase in danger for [her]."  Second, Perez-Tino asserted that the remilitarization of Guatemala in 2011 meant that the country had become much more dangerous for the Maya K'Iche' and thus for her.  Lastly, she asserted that Guatemala had become a much more hostile place for members of the Organizacion Maya K'Iche' ("OMK") -- a Mayan activist organization which the parties agree Perez-Tino joined after her arrival in the United States in 2001.  We consider each contention in turn.

**A.**

To show that country conditions had worsened for her during the relevant period, Perez-Tino first submitted evidence that Juan Samayoa had been arrested in the United States in 2017 and was facing "deportation" to Guatemala.  Perez-Tino explained

that Samayoa was a former Ladino[1] paramilitary commander in Guatemala who had been arrested for committing war crimes during that country's civil war. She claimed that Samayoa and his underlings had tortured her grandfather and murdered two of her uncles for their role in indigenous activism during the Guatemalan civil war. She thus asserted that Samayoa's impending return to Guatemala placed her in danger of being "targeted for persecution by Ladinos who support Samayoa as well as right-wing Ladinos who support those policies and attacks on the Maya Quiche community."

In support of the contention that the prospect of Samayoa's return to Guatemala makes her "return to Guatemala exceedingly dangerous," Perez-Tino asserted that, as a "member of a particularly targeted indigenous family," she "is a witness to Samayoa's atrocities during the Civil War, as well as [a member of] an influential indigenous family." Perez-Tino further asserted that the danger presented by his return is "heightened by the remilitarization of the conflict between the Ladinos and" her "indigenous communities in Guatemala, which has empowered and emboldened supporters of Samayoa" in Guatemala.[2]

---

[1] Ladino is a term that refers to people of mixed race in Guatemala. According to Perez-Tino, Ladinos currently hold governmental power and have historically discriminated against the Maya K'Iche' people.

[2] Perez-Tino also asserted that the danger posed to her by the return of Samayoa was increased due to her involvement in OMK. But, for present purposes, we set that assertion aside, as, later in this opinion, we separately consider the BIA's rejection of her

The BIA rejected this ground for finding "changed country conditions." The BIA did so by concluding that Perez-Tino had not "adequately explain[ed]" why she did not mention Samayoa's past actions with regard to her family during her prior immigration hearing in 2009, given that one of her claims then was that her family had been previously targeted during the Civil War.

In both her motion to reopen before the BIA and her briefing to us, however, Perez-Tino plainly explains that the reason that she did not mention Samayoa in her 2009 hearing was that his arrest in the United States -- and the potential for deportation to Guatemala that arose from it -- did not occur until 2017. Consequently, we fail to see why this explanation does not "adequately explain" Perez-Tino's decision to refer to Samayoa for the first time in her 2018 motion to reopen.

We note in this regard both that Perez-Tino supported her Samayoa-related assertions in support of her motion to reopen to the BIA with multiple affidavits from friends and family attesting to the veracity of those claims and that the BIA does not expressly mention any concerns regarding the credibility of her Samayoa-based claims. In fact, the government asserts to us that the BIA did not ground its decision regarding her Samayoa-

---

attempt to show changed country conditions in connection with her involvement with OMK.

based claim of changed country conditions on an adverse credibility determination.

The BIA did separately conclude that Perez-Tino's "fear based on the arrest and detention of Samayoa" was too "speculative," as Samayoa has not, as of yet, "been removed or extradited to Guatemala."  But, the government does not dispute that Samayoa was issued a notice to appear for removal proceedings nearly five months prior to Perez-Tino filing her motion to reopen or that an IJ ordered his deportation on March 29, 2018, a decision that he is currently challenging in this Circuit.[3]  Nor does the BIA explain why Perez-Tino requires more than evidence of Samayoa's pending removal to support her fear that he will be returned to Guatemala.

In sum, the grounds that the BIA gave for rejecting Perez-Tino's Samayoa-based changed country conditions arguments are not sustainable.  They thus cannot support the BIA's decision to reject Perez-Tino's motion as untimely.

---

[3]  We note that the IJ issued his order for Samayoa's deportation well before the BIA's August 7, 2018 decision to deny Perez-Tino's motion to reopen.  We may take judicial notice of the past proceedings in Samayoa's case.  See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) (noting that courts can take judicial notice of their own dockets); Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

Perez-Tino also sought to show that "the changing political landscape in Guatemala" since the denial of her initial application for asylum and withholding of removal resulted in worsened conditions for her safety and that, for this, too, she could satisfy the "changed country conditions" exception to the deadline for filing a motion to reopen that otherwise would apply. Specifically, Perez-Tino argued to the BIA in support of her motion to reopen that the 2011 election in Guatemala and the subsequent remilitarization of the Quiche region in and of themselves amounted to a change in country conditions.

The BIA rejected that argument. It concluded that:

> [t]he voluminous country condition evidence submitted along with the respondent's motion does not demonstrate a material change in circumstances in Guatemala, but rather a continuation of discrimination against and land disputes involving indigenous people as well as human rights abuses, including police corruption and societal violence, which existed at the time of the respondent's 2009 merits hearing.

Perez-Tino argues to us that the BIA reversibly erred in reaching this conclusion because it failed "to consider critical evidence of changes in political conditions within Guatemala, and by considering facts in isolation rather than considering the totality of the circumstances of [Perez-Tino's] case." But, the BIA's express reference to the "voluminous country condition

evidence" that Perez-Tino submitted precludes us from agreeing. Moreover, Perez-Tino develops no argument that the BIA's determination that there had not been a "material change in circumstances" with respect to this aspect of her attempted showing to the contrary was unsupported by substantial evidence. (Emphasis added.) See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (noting that arguments not developed on appeal are deemed waived). We thus see no basis for upsetting this aspect of the BIA's ruling.

### c.

Perez-Tino's final basis for contending that country conditions had changed relates to her involvement with OMK. The BIA rejected this contention on the ground that she had shown only a change in personal circumstances and not a change in country conditions. There is no doubt that Perez-Tino's decision to become involved with OMK in 2001 was a personal choice. Nor is there any doubt that a change in personal circumstances is not itself a change in country conditions. See Xin Qiang Liu v. Lynch, 802 F.3d 69, 77 (1st Cir. 2015); Yang Zhao-Cheng v. Holder, 721 F.3d 25, 28 (1st Cir. 2013). Nevertheless, Perez-Tino argues to us -- as she argued to the BIA in support of her motion to reopen -- that our decision in Larngar v. Holder, 562 F.3d 71 (1st Cir. 2009) supports her OMK-based contention that country conditions had changed.

- 11 -

In Larngar, we held that a petitioner could establish changed country conditions based on the fact that a man that the petitioner had assaulted ascended to a position of substantial political power in Liberia after the petitioner had been removed. See id. at 77-78. In so holding, we made clear that the BIA abuses its discretion "when it impliedly conclude[s] that, regardless of whether the petitioner induced the changed circumstances [in the country to which she will be removed] or not, so long as the petitioner originally induced the reason for [her] fear of harm [s]he cannot establish changed country circumstances." Id. at 78. We explained that the BIA must avoid making such conclusions because they do not "further[] the policy interest behind the personal-circumstances rule -- preventing applicants from orchestrating changes that serve their self-interest." Id. And, we concluded, because the BIA had failed to consider the changed circumstances in Liberia that the petitioner "had and has no control over" and focused instead only on the fact that the petitioner was responsible for the assault, we had to vacate "the BIA's denial of the motion to reopen." Id.

According to Perez-Tino, her case requires the same outcome. She asserts that country conditions have become materially worse for members of OMK since the proceedings before the IJ in 2009 because the current Guatemalan administration views OMK and its members as a threat to its systematic oppression of

indigenous people. Perez-Tino claims, for example, that since her failed attempt to secure relief from removal, the fathers of two OMK activists were killed in retaliation for the OMK's "organizing activities." Yet, she contends, the BIA did not address this aspect of her OMK-based argument for establishing changed country conditions and instead focused only on the fact that her involvement with OMK was the consequence of a personal choice, even if it were one that she made prior to the 2009 proceedings before the IJ. For that reason, she maintains, Larngar precludes us from sustaining the BIA's reasons for rejecting her OMK-based claim of changed country conditions.

We agree. The BIA rejected Perez-Tino's OMK-based changed country conditions argument by stating: "The only change shown is the respondent's activities in the United States with the Organization Maya K'Iche, which is a change in the respondent's personal circumstances." In doing so, the BIA cited to the portion of Larngar that merely sets forth examples of changes in circumstances, such as the birth of a child, marriage, or conversion to a particular religion, that would, on their own, like joining an organization, "typically . . . be categorized as a change in personal circumstances" because they are "self-induced." Larngar, 562 F.3d at 76-77 (emphasis added) (collecting cases). Thus, nothing in the BIA's decision indicates that it assessed how the treatment of OMK members in Guatemala may have

- 13 -

changed since the IJ's 2009 decision. From all that we can discern from the face of the BIA's opinion, it appears that, as Perez-Tino contends, the BIA mistakenly "assumed that, because Ms. Perez-Tino voluntarily associated herself with OMK, that condition was a personal circumstance and could not support her motion to reopen[.]"

We note that the government's argument on appeal in defense of the BIA's ruling reinforces the concern that it was based on the same mistake that led us to vacate the BIA's decision in Larngar. The government contends that we must uphold the BIA's decision because Perez-Tino's "joining" OMK was "self-induced." But, the government does not suggest that the BIA assessed, at any point, how the danger posed to members of OMK in Guatemala may have changed after the IJ's decision in 2009. Instead, the government appears to be of the view that the mere fact that Perez-Tino joined the OMK -- even if she did so prior to the proceedings before the IJ in 2009 -- precludes her OMK-based effort to show a change in country conditions from succeeding. But, while it is true that Perez-Tino's decision to join OMK in 2001 was a personal choice, that fact alone is not necessarily dispositive of the matter, given our decision in Larngar.

Simply put, Perez-Tino offered evidence to support her contention that Guatemala had become a much more dangerous place for OMK members since the IJ's 2009 decision. The BIA must assess

that evidence and find it wanting before it may conclude that her OMK-based argument fails to establish the requisite change in country conditions.

### III.

Of course, even if a petitioner can establish a change in country conditions, the BIA "may still deny the motion [to reopen] if the evidence fails to 'establish a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief.'"  Larngar, 562 F.3d at 78 (quoting Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2007)).  But, we agree with the government that the BIA did not reach the issue of whether Perez-Tino had established prima facie eligibility for relief, notwithstanding its curious reference to whether the "general country conditions evidence . . . prima facie demonstrate[s] that the respondent faces an individualized risk of harm rising to the level of persecution."  (Emphasis added.)  Nor does Perez-Tino argue that the record "compel[s]" that we find she has established a prima facie basis for relief.  Accordingly, we vacate and remand the BIA's ruling.  See Castañeda-Castillo v. Gonzales, 488 F.3d 17, 24-25 (1st Cir. 2007) (noting that remanding to the BIA is the "ordinary course" where the record does not "compel[]" a decision in the petitioner's favor).

In doing so, we note that "'[p]rima facie' scrutiny of a motion to reopen means an evaluation of the evidence that

accompanies the motion as well as relevant evidence that may exist in the record of the prior hearing, in light of the applicable statutory requirements for relief."  Smith v. Holder, 627 F.3d 427, 438 (1st Cir. 2010) (quoting Sevoian v. Ashcroft, 290 F.3d 166, 173 (3d Cir. 2002)).  We note, too, that, because new evidence proffered in support of a motion to reopen must be "material," "it follows that the prima facie showing will always include some new evidence."  Id.  But, we emphasize, this prima facie showing need not "be made entirely through new evidence" and instead may "be based on the new evidence coupled with 'the facts already of record.'"  Id. (quoting In re L-O-G-, 21 I. & N. Dec. 413, 419 (BIA June 14, 1996)).

## IV.

The petition for review is **granted**.  The decision of the Board of Immigration Appeals is **vacated and remanded** for further consideration consistent with this opinion.